UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------×

ROBERT SOLOMON,

            *Plaintiff*,

v.

FLYNN FAMILY OFFICE, LLC *and* FOCUS FINANCIAL PARTNERS, LLC,

            *Defendants.*

-------------------------------------------------------------------------×

Case No.: _____

**COMPLAINT**

      Plaintiff, Robert Solomon, by his attorneys, The Harman Firm, PC, for his complaint against Defendant, alleges:

### NATURE OF THIS ACTION

    1.    In this action, Plaintiff Robert Solomon ("Plaintiff" or "Mr. Solomon") seeks damages against his former employer, Defendants Flynn Family Office, LLC and Focus Financial Partners, LLC (collectively "Defendants") for: (i) denying him his due benefits by misclassifying him as an independent contractor, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*; (ii) subjecting him to a hostile work environment in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131; and (iii) retaliating against him for complaining of illegal discrimination, in violation of the NYCHRL.

### JURISDICTION AND VENUE

    2.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendants violated Plaintiff's rights under ERISA, 29 U.S.C. §§ 1001 *et seq.*

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL as the NYCHRL claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to the claim occurred within this District.

## THE PARTIES

5. Plaintiff, Robert Solomon, at all relevant times hereto, was and is a resident of Queens County, State of New York.

6. Upon information and belief, Defendant Flynn Family Office, LLC ("FFO") is a foreign limited liability corporation organized under the laws of the State of Delaware, with its headquarters located at 135 West 50th Street, New York, NY 10020.

7. Upon information and belief, Defendant Focus Financial Partners, LLC ("Focus") is a foreign limited liability corporation organized under the laws of the State of Delaware, with its headquarters located at 825 3rd Avenue, New York, NY 10022.

8. Upon information and belief, in and around June 2014, Defendant Focus purchased a major stake in Defendant FOO.

9. Upon information and belief, Defendant Focus participated in the strategic direction and day-to-day operations of Defendant FFO from FFO's inception. Defendant Focus administered and maintained FFO's human resources department, influenced hiring and firing decisions, administered the sexual harassment/hostile work environment prevention training mandated for all FFO's employees.

## TRIAL BY JURY

10.     Plaintiff respectfully requests a trial before a jury.

## FACTS

### Background

11.     In and around April 2014, Rick Flynn, a co-founder of FFO, invited Plaintiff Robert Solomon to help launch FFO.

12.     Mr. Solomon accepted the offer, taking responsibility for FFO's marketing and public relations.

13.     Prior to April 2014, Plaintiff was employed with Rothstein Kass, a firm that caters to hedge funds and other alternative investment firms.

14.     Upon information and belief, in and around 2014, KPMG LLP, a U.S. audit, tax and advisory firm, purchased Rothstein Kass. As a result of the integration of Rothstein Kaas into KPMG, Rick Flynn, formerly the principal-in-charge of the Family Office Group at Rothstein Kass, founded FFO. Several other Rothstein Kass employees, including Mr. Solomon, joined Mr. Flynn at FFO.

15.     Among the reasons Mr. Solomon agreed to join FFO were: (i) Mr. Solomon supported FFO's purported mission to cater to successful, powerful women; (ii) and FFO's officers promised to Mr. Solomon that he would become an equity partner in the business.

16.     Defendants sought and ultimately were retained by numerous, powerful, high profile women, including Kelly Ripa and Rihanna.

17.     Mr. Solomon, having worked in the financial services sector for approximately fifteen (15) years, was appalled by the pervasive sexism and misogyny common in the financial services industry, and thus welcomed the invitation to join FFO. Mr. Flynn represented, and Mr.

Solomon was led to believe, that FFO would be more egalitarian in its treatment of women than financial service companies for which Mr. Solomon had previously worked.

### ERISA Violation

18. Defendants FFO and Focus offer a variety of employee-benefits plans to their employees.

19. These benefits plans are subject to the provisions of ERISA.

20. Upon information and belief, Defendants FFO and Focus have at all relevant times been and continue to be employers within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), administrators with the meaning of ERISA § 3(16)(A), 29 U.S.C. §10002(a)(1), and fiduciaries within the meaning of ERISA §3(21), 29 U.S.C. § 1002(21).

21. Upon information and belief, FFO provides eligible employees a wide range of benefits. Benefits eligibility under FFO's programs is dependent upon many factors, including employee classification.

22. Upon information and belief, FFO has established a 401(k) plan to provide employees the potential for future financial security for retirement. Full-time employees are eligible to join the 401(k) plan after the first date of hire.

23. Upon information and belief, the FFO health insurance plan provides employees and their dependents (including Domestic Partners) access to medical and dental insurance benefits. Regular, full-time employees are eligible to participate in the plan on the fifteenth of the month following the first date of employment.

24. Defendants misclassified Mr. Solomon as an independent contractor beginning at FFO's launch on June 1, 2014.

25. Mr. Solomon worked as an independent contractor for approximately six (6) months, from June 2014 to December 2014.[1]

26. During his time as an independent contractor, Mr. Solomon did not receive the benefits, including health insurance, which Defendants provided their other employees.

27. Mr. Solomon incurred significant medical expenses during this time period related to a disability of which Defendants were aware.

28. Defendants misclassified Mr. Solomon as an **independent contractor** solely to avoid providing him with medical and other benefits to which he was **due**; Defendants should have classified Mr. Solomon as an employee eligible to receive employee benefits.

29. Mr. Solomon, during all relevant times, was Defendants' employee.

30. From April 2014 to December 2014, Mr. Solomon produced press releases and performed other public relations functions for FFO and, at FFO's behest, for other organizations that FFO sought to woo as clients.

31. Mr. Solomon produced this work on deadlines defined by FFO and to FFO's specifications.

32. Mr. Solomon primarily performed this work at FFO's office, which from April through June 2014 were located within Rothstein Kass.

33. Mr. Solomon had no authority to hire or fire people assisting him with these duties.

34. In and around January 2015, after repeatedly requesting health insurance, FFO reclassified Mr. Solomon as an employee.

35. At this time, Mr. Solomon's job responsibilities did not change; he performed the same tasks as an employee in the same way as he did independent contractor.

---

[1] From April 2014 until June 2014, Mr. Solomon properly was classified as an independent contractor.

36. Defendants' misclassification of Mr. Solomon harmed him. To wit, Mr. Solomon lost medical and other benefits that Defendants should have provided him as an employee.

### Hostile work environment

37. Defendants created an environment that fostered improper sexual comments about women, as well as disability discrimination.

38. In and around June 2014, Mr. Flynn addressed staff shortly after FFO's launch. He began his remarks with a question about a young, female employee's "ass of steel." Several female employees complained to Mr. Solomon about the comment (because at that time, FFO did not have a human resources department). The employee to whom the comment was directed only stayed with FFO for a few more weeks. When she resigned, Mr. Flynn and Evan Jehle, an FFO partner, echoed the same sentiment, stating, "Fuck her."

39. Alan Kufeld, an FOO partner, routinely made obscene comments about women in the office, both in Mr. Solomon's and the FFO's female employees' presence, and regularly engaged FFO's staff in discussions concerning the physical attributes of the women in the office.

40. Mr. Kufeld described an intern's mother's anatomical appearance and attractiveness "for her age" in detail, while expressing the hope that the intern would be similar in build and appearance. Mr. Kufeld then went into detail about the intern's mother, stating that she "is banging the drummer from Skid Row."

41. Mr. Kufeld discussed with Mr. Flynn the bodies of former female assistants, remarking that one assistant had "lost points in [Mr. Kufeld's] eyes because she was too dark" in complexion.

42. Mr. Kufeld regularly commented on FFO's female clients in the entertainment sector, often using the media reports Mr. Solomon prepared as a pretense to look at female clients' pictures. Mr. Kufeld indicated a particular fondness for Rihanna, who was "not too dark" to be "hot." This conversation preceded Mr. Kufeld's monologue on what Caribbean nationalities were the most attractive based on skin tone.

43. Other topics Mr. Kufeld regularly discussed in Mr. Solomon's presence included sex tourism and the relative "hotness" of Asian women.

44. Mr. Kufeld also frequently used obscene language regarding male and female anatomy, reinforcing false stereotypes that match male anatomy to preferred personality attributes.

45. For example, Mr. Kufeld, speaking to Mr. Solomon in front of other FFO employees, commented that Mr. Solomon "had no balls."

46. These comments particularly concerned Mr. **Solomon, who was responsible** for **managing FFO's public relations.**

47. Mr. Solomon repeatedly complained to human resources about Mr. Kufeld's **inappropriate comments. Defendants** ignored his complaints.

48. Throughout Mr. Solomon's employment with FFO, whenever he complained of unprofessional, sexist, and inappropriate behavior, he was ignored, excluded and mocked. For example, Mr. Kufeld repeatedly chastised Mr. Solomon for being "too sensitive" to overtly sexist and misogynistic conduct.

49. In early 2015, Mr. Flynn publicly labeled Mr. Solomon and the head of FFO's human resources the "old people" in the firm. Mr. Solomon was forty-one (41) years of age at the time. This comment demeaned Mr. Solomon in front of his peers.

50. Mr. Solomon complained to Defendants' human resources department but again Defendants ignored his complaint.

51. Defendants also ridiculed Mr. Solomon's disability.

52. Mr. Solomon suffers from a medical condition that makes it difficult for him to eat. Mr. Solomon rightfully does not want to reveal his private, confidential medical history to other employees of FFO or clients so typically offers a benign excuse for not eating at FFO events. Mr. Jehle would point out each time Mr. Solomon refused to eat to FFO employees, clients, and industry sources.

53. Mr. Jehle routinely and publicly mocked Mr. Solomon's medical condition, for example, "Rob does not eat in front of other people."

54. Mr. Jehle sharing Mr. Solomon's medical information was embarrassing and limited his prospects for future employment.

55. Mr. Solomon brought his complaint to Mr. Kufeld, who responded, in substance, that Mr. Solomon "was weak and lacked resilience."

56. Mr. Solomon complained to Defendants human resources about this demeaning conduct. Again Defendants failed to take any corrective action to put a stop to this hostile work environment.

### Termination

57. On or about May 18, 2015, Defendants terminated Mr. Solomon's employment.

58. Defendants' only explanation was that FFO was in the process of eliminating Mr. Solomon's position; however, this reason purely was pretext.

59. Mr. Amar, another FFO employee, now does Mr. Solomon's work.

60. Defendants terminated Mr. Solomon's employment in retaliation for his rightful complaints about discriminatory and harassing comments made about himself and others in the workplace.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Denial of Benefits in Violation of ERISA § 502(a)(1)(B)

61. Plaintiff repeats and realleges the allegations contained in paragraphs 1 though 60 with the same force as though separately alleged herein.

62. Defendants deliberately misclassified Plaintiff as a consultant and/or independent contractor with the specific intent to deny him benefits.

63. For the first eight (8) months of Plaintiff's employment with Defendants, Defendants misclassified Plaintiff as an "independent contractor."

64. In fact, Plaintiff should have been classified as an employee.

65. As an employee, Plaintiff should have been entitled to benefits, including medical insurance, under Defendant's benefits plan.

66. Because of this misclassification, Plaintiff was denied, to Defendant's gain, numerous benefits, such as health insurance, 401k benefits, and pension.

67. Defendant's misclassification resulted in the wrongful denial of benefits to Plaintiff.

68. Plaintiff seeks damages including, but not limited to, the value of lost health and disability benefits from April 2014 through December 2014, and an award of attorneys' fees and costs, and such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of the New York City Human Rights Law
### N.Y.C. Admin. Code §§ 8-101 to 8-131

69. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70. The NYCHRL prohibits an employer from subjecting its employee to a hostile work environment, *inter alia*, based on gender and disability.

71. Defendants repeatedly subjected Plaintiff to a work environment permeated with complained of, offensive and discriminatory statements against, *inter alia*, female and disabled employees.

72. As a direct and proximate consequence of Defendants' illegal discrimination, Plaintiff has been denied wages, salary, employment benefits, professional advancement, and actual monetary losses, and has suffered and continues to suffer substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

73. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of the New York City Human Rights Law
### N.Y.C. Admin. Code §§ 8-101 to 8-131

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. The NYCHRL prohibits employers from retaliating against employees for opposing discriminatory conduct in violation of the NYCHRL.

76. Plaintiff repeatedly complained to Defendants regarding offensive and discriminatory statements made in the workplace against women and him.

77. Defendants retaliated against Plaintiff for raising these complaints by, *inter alia*, terminating him.

78. As a direct and proximate consequence of Defendants' illegal retaliation Plaintiff has been denied wages, salary, employment benefits, professional advancement, and actual monetary losses, and has suffered and continues to suffer substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

79. Plaintiff is entitled to compensatory damages, punitive, damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. on Plaintiff's first cause of action, damages to be determined at trial, but in no event less than $500,000;

b. on Plaintiff's second cause of action, damages to be determined at trial, but in no event less than $500,000;

c. on Plaintiff's third cause of action, damages to be determined at trial, but in no event less than $500,000;

d. an award of prejudgment and post judgment interest;

e. an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

f. such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 18, 2015

The Harman Firm, PC

By: _____
Walker G. Harman, Jr.
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com